### CHARLES Y. FELTON *v*. ETHALINDA DEALL.

The defendant, being the owner of a farm and ferry, leased them by parol to one H., for the term of one year, upon certain conditions, among which it was provided, that the profits and proceeds of the farm should be divided equally between the defendant and the lessee, that the lessee should keep and manage the ferry at his own expense of labor, the defendant to put the boat in good order at the commencement of navigation and the expense of subsequent repairs to be borne one half by the defendant and one half by the lessee, that the lessee should pay to the defendant one half of the receipts for the ferry weekly and every week during the continuance of the lease, that the lessee was to conduct all his business, as such tenant, and to manage the said "farm and premises," so leased to him, in a careful, prudent and husbandlike manner, and was to allow no one, but a suitable man, to attend the ferry, and was to be responsible to the defendant for "damages occasioned by wilful misconduct, or neglect, in the management of the said farm and premises and in the management of the said ferry and the scow and boat."  *Held*, that by this agreement H. became tenant of the defendant, both of the farm and ferry, and that the defendant was not responsible for the negligence of H. in so managing the ferry, that damage had accrued to the person and property of a passenger in the boat.

Felton *v.* Deall.

TRESPASS ON THE CASE for so negligently managing a ferry boat, that the person and property of the plaintiff, who was a passenger in the boat, suffered injury.  Plea, the general issue, and trial by jury, June Term, 1849,—BENNETT, J., presiding.

On trial it appeared, that the defendant owned a farm situated on Lake Champlain, in Ticonderoga in the state of New York, from which the ferry in question crossed the lake to Shoreham in this state ; that by an act of the legislature of New York the defendant and her assigns were entitled to maintain and use the said ferry for a time specified ; and that after the passing of the act the defendant did establish and maintain the ferry in question.  It also appeared, that in 1846 the defendant leased the ferry and the south part of the farm to one Bailey, by an agreement in writing, under seal ; by which it was provided, among other things, that the defendant should continue to reside upon the farm, that the profits and proceeds of the farm and premises should be divided equally between the defendant and Bailey, that Bailey should keep and manage the ferry at his own expense of labor, the defendant to put the boat in good order at the commencement of navigation and the expense of subsequent repairs to be borne one half by Bailey and one half by the defendant, that Bailey should pay to the defendant one half of the receipts of the ferry weekly and every week during the continuance of the lease, that Bailey should conduct all his business as such tenant, and should manage " the farm and premises so let and leased to him, in a careful, prudent and husbandlike manner, and should on no account allow any but a faithful, honest, obliging and temperate man to attend the ferry, and that Bailey should be responsible to the defendant " for damages occasioned by wilful misconduct, or neglect, in the management of the said farm and premises, and in the management of the said ferry and the said scow and boat."  It also appeared, that in April, 1848, the defendant, by a parol agreement, leased the same ferry to one Hobbie, for the period of one year, upon the same provisions and conditions in relation to the ferry, as were provided for in the lease to Bailey, and also the whole of her farm,—in relation to which there were some slight modifications of the terms of that lease,—and that Hobbie entered into the possession of the farm and of the ferry under that lease, and continued to manage the ferry, under the lease, from that time until

after the accruing of the injury complained of by the plaintiff. It also appeared, that the ferry landing was upon the farm of the defendant, and that she continued to reside upon the farm, as she had done for several years previously; but it appeared, that it was generally understood in the vicinity, that the defendant had leased the farm and ferry to Hobbie for one year, and that the plaintiff, who resided at Shoreham, had notice, before he commenced this suit, that the ferry was so leased.

The plaintiff gave evidence tending to prove, that in May, 1848, he went upon the ferry boat, which was the property of the defendant, with a horse and wagon, for the purpose of crossing from Ticonderoga to Shoreham, and that from the negligence and want of care and skill of Hobbie in managing the boat, the boat was upset, and the plaintiff sustained injury to his person and property.

The court decided, that the defendant, under the circumstances, was not liable for the default or neglect of Hobbie; and a verdict was thereupon returned in favor of the defendant. Exceptions by plaintiff.

*H. Hale* and *C. D. Kasson* for plaintiff.

The defendant was interested in the freight money, and, according to the rule in *Ambler* v. *Bradley*, 6 Vt. 119, might recover it in her own name; if so, there was such a privity, as renders her liable for losses, or injury. This case seems to fall directly within the case of *Bowman* v. *Bailey*, 10 Vt. 170, where the court held, that though a case like this was not a partnership, yet the interest was joint, and all might sue for the freight. All persons interested in the freight are liable for injuries. Story on Bail. §§ 506, 507. *Waland* v. *Elkins*, 1 Stark. R. 272, [2 E. C. L. 387.] The substance of the agreement shows, that it was not a *lease*, but only a mode of paying Hobbie for carrying on the farm and managing the ferry. *Bishop* v. *Doty*, 1 Vt. 37. By the terms of the agreement Hobbie was to be liable to the defendant for all losses, &c.,—plainly showing, that she regarded herself as primarily liable.

*E. J. Phelps* for defendant.

Under the circumstances it is very apparent, that the defendant was not the carrier, and was not liable to those carried. The foun-

dation of all such liability is the assuming to act and transact business in that capacity, and the reception of the profits. The mere ownership of property, which is used by another person, under a lease, in the prosecution of such business for his own benefit, creates no liability. It has been universally held, that such a state of facts makes the hirer, or lessee, the owner *pro hac vice*, and that he alone is responsible. *Ladd* v. *Chotard*, 1 Minor's Ala. R. 366. *Boyce* v. *Anderson*, 2 Leigh 550. *Emery* v. *Hersey*, 4 Greenl. 407. *Reynolds* v. *Toppan*, 15 Mass. 370. *Taggard* v. *Loring*, 16 Mass. 336. *Thompson* v. *Snow*, 4 Greenl. 268. *Frazer* v. *Marsh*, 13 East 238. *McIntyre* v. *Bowne*, 1 Johns. 229. Abbott on Ship. 52, 70. Ang. on Carriers, § 147.

The opinion of the court was delivered by

KELLOGG, J. This was an action upon the case, charging the defendant with an injury occasioned to the plaintiff by the negligence of the defendant's servant. Upon the facts disclosed in the case, the court below instructed the jury, that the defendant was not personally liable for the injury done to the plaintiff. This decision being excepted to, the case is brought here for the opinion of this court. The defence relied upon is, that at the time of the injury, of which the plaintiff complains, the ferryman, whose negligence occasioned the injury, was not the servant of the defendant, and that she was in no manner accountable. The decision of the question depended upon the construction given to an instrument executed by the defendant to one Bailey and referred to in the bill of exceptions. It was therefore a proper subject for the determination of the court.

That the defendant, in March, 1848, leased her farm and ferry, by parol agreement, to Hobbie, for one year, upon the terms and stipulations contained in her written lease to Bailey, is not controverted, and that Hobbie then went into the occupancy of the demised premises, under the lease, is not denied. Nor is it questioned, that if the contract of letting by the defendant to Hobbie was such as to divest the defendant of the occupancy and control of the farm and ferry, and vest the same in Hobbie for the term of the demise, the defendant would not be liable for injuries occasioned by the negligence of Hobbie. In other words, if, by the contract,

Hobbie became the tenant, rather than the servant, of the defendant, she is not responsible for his acts.

But it is urged, that the contract with Bailey was not a lease of the premises. It is difficult to perceive any tenable ground, upon which this objection is founded. The instrument certainly contains the usual covenants and all the ordinary characteristics of a lease. It is, however, contended, that though the instrument be regarded as a lease, yet that it did not divest the defendant of the control of the premises. This objection, we think, is equally unfounded. There is no reservation of a right to the defendant to interfere with or in any manner control the lessee in the management of the premises. The lease does, indeed, bind the lessee to a very strict and faithful performance of the stipulations therein; but upon his failure to perform the same, the lessor's only remedy would be by suit for a breach of the covenants. It is the ordinary case of a lease of premises, to be managed and controlled by the lessee during the continuance of the lease; and the lessor, during the term, had no more authority than a stranger, to disturb the lessee in his occupancy, or in any manner interfere with his right to the management and control of the premises. It cannot, therefore, as it appears to us, be said, that the defendant, at the time of the injury complained of, had any control over the acts of Hobbie; and if she had no right to control him, she cannot be made responsible for his acts.

It is farther insisted, that the clause in the lease, securing to the defendant a moiety of the earnings of the boat, created such an interest in the defendant in the profits of the ferry, as makes her responsible for the negligence of Hobbie in the management of the same. We cannot, however, yield our assent to this proposition. There is nothing in the lease to warrant such a conclusion. The object of this clause is simply to fix the amount of rent, to be paid for the use of the ferry, and the same is to be ascertained by the amount of the receipts. And the fact, that the rent of the ferry is to be paid by weekly instalments, does not change or vary the legal character and effect of the lease. There is no pretence for saying, that the defendant and her lessee, Hobbie, are partners in the matter of the ferry. She has no authority to appoint or employ ferrymen, or to control them, when employed by Hobbie.

Felton *v.* Deall.

It is farther urged, that the clause in the lease, making the lessee liable to the defendant " for all damage occasioned by wilful misconduct, or neglect, in the management of the farm and premises, and in the management of the ferry and boat," subjects her to the present suit. We do not think, however, that this part of the lease is open to such a construction, or that the parties to it ever contemplated such a liability. The liability imposed upon Hobbie by this clause applies as well to the farm as to the ferry, and we think it only applies to such damages, as should result to the reversionary interest of the defendant from the misconduct or neglect of the lessee. Should the ferry be rendered less valuable to the defendant by reason of misconduct or neglect of the lessee, it would doubtless be a breach of this covenant, for which he would be liable. So if by his misconduct the boats should be injured, he would be responsible to the defendant. In fact, any injury to the demised premises, injuriously affecting the reversion and occasioned by the misconduct of the lessee, would render him liable to the defendant; but we do not think, it was ever intended by the parties to embrace injuries done by the lessee to third persons, and for which the law in no manner makes the defendant responsible.

The judgment of the county court is affirmed.